

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

August 1, 2025

**BY ECF**
Hon. Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:     *United States of America v. LabQ Clinical Diagnostics, LLC, et al.*
>         No. 22 Civ. 751 (LJL), No. 22 Civ. 10313 (LJL)

Dear Judge Liman:

This Office represents the United States in this False Claims Act case. We write in opposition to Defendants' requests to: (1) extend, by two weeks from July 30, 2025 to August 13, 2025, Defendants' deadline for the production of documents responsive to the Government's RFPs 1, 2, 19-22, 31, 33, 36-39 (together, the "Relevant Merits RFPs"); and (2) modify the Court's July 30, 2025, Order that requires Defendants to complete their productions of responsive financial discovery by August 4, 2025.[1] The Government respectfully requests that the Court: (1) set a final deadline of August 6, 2025 for Defendants to produce documents responsive to the Relevant Merits RFPs; and (2) deny Defendants' request to modify its July 30, 2025, Order.

This dispute is not just about a two-week extension of an interim deadline. Instead, Defendants have claimed an inability to comply with agreed-upon and Court-ordered discovery because they are purportedly unable to pay vendor costs necessary to comply with their discovery obligations. This is not so. Instead, Defendants have chosen not to pay these vendor costs and instead transferred far greater amounts of funds out of their accounts to other companies controlled and owned by Landau, in violation of this Court's August 2024 Order. As set forth below, the Government recently uncovered that some of these transfers occurred even *after* the Government moved for sanctions and LabQ had been invoiced by the relevant vendor. Further, Defendants provide no explanation as to how they could possibly comply with future discovery deadlines given this nonpayment. As this Court has instructed, this case should move expeditiously through remaining discovery. Defendants' request for an extension should be denied.

***July 30 Merits Discovery Interim Deadline.*** Defendants argue that the July 30 deadline should be extended by two weeks because "on or about July 17, 2025, Defendants lost access to their email server, as well as certain cloud-based storage due to non-payment of outstanding

---

[1] Defendants state that they will have only "substantial" completion by that date, suggesting that they may not produce all financial discovery by the Court ordered deadline.

invoices." Dkt. No. 665 at 1. Defendants claim that they lack the ability to restore access to their servers until payment "of $36,162.38 is made," and that "Defendants are without the ability to pay for their ordinary business expenses." *Id.* Defendants' request should be denied. As an initial matter, it is untimely. Defendants filed their request on the day that their productions were due. Your Honor's Individual Practices provide that extension requests should be made at least two business days before the deadline. Even so, the Government appreciates and understands that unforeseen events may occur close to discovery deadlines that necessitate reasonable extensions. This is not such a situation. These expenses were entirely foreseeable—indeed, many of the invoices are dated months ahead of Defendants' agreement to the July 30 deadline. *See* Dkt. No. 575 (July 8 joint letter reflecting defendants' agreement to the deadline); Dkt. 665 at 3, 6, 7 (reflecting invoices dated to April and May 2025). Defendants also concede that they knew of the issue at least as of July 17, *see id.* at 1, yet did not make their request until the evening of July 30.

More fundamentally, while Defendants have allowed their access to vital records necessary to litigate this case to lapse, they continually made much larger payments to other companies controlled by Landau. As this Court has held, Defendants have wrongfully transferred funds to other Landau-controlled companies. *See* Dkt. No. 574. Indeed, the amount of wrongfully transferred funds exceeds $685,000.[2] *See* Dkt. No. 585 at ECF Pages 12-13. Defendants continued their conduct of transferring funds out of the company to companies not subject to writs after receiving some of the invoices concerning their email server and cloud-based storage, and also after receiving notice of the Government's motion for contempt based on these types of transfers. Specifically, various invoices cited by Defendants are respectively dated April 28, 2025, May 25, 2025, and May 28, 2025. *See* Dkt. No. 665 at 3, 6, 7. The Government filed its motion for contempt on May 23, 2025. Dkt. No. 534. However, between May 29, 2025 and June 30, 2025[3], LabQ and Dart Medical transferred: (1) over $25,000 to Care Bio Clinical Corp.; and (2) over $22,000 to CareQure LLC. *See* Ex. A, Declaration of Paul Miccarelli ¶¶ 5-6. Defendants could have—but chose not to—use these funds to pay for access to their servers and storage. Defendants cannot continue to transfer funds for prohibited purposes, much more fail to fulfill their discovery obligations because of fictional financial hardships created by these improper transfers.

Further, when it suits Defendants, their related entities (to whom they have made fraudulent transfers) provide money back to Defendants for expenses they deign to pay. For example, as this Court found, "[b]ank records show transfers of over $19 million from Dart Medical's bank account to an LLC of which Landau is the sole member—Har Hazayis'm Realty LLC ("Har Hazayism")—dated on or after Defendants received the CIDs issued by the Government." Dkt. No. 360, Opinion and Order at 91. On June 16, 2025, however, Har Hazyis'm Realty LLC re-infused $40,000 into LabQ's bank account, which LabQ appears to have used to pay legal expenses to one of the firms representing him in this lawsuit. *See* Micarrelli Decl. ¶ 7. These transfers demonstrates that Defendants—through their alter ego corporations such as Har Hazayism—can freely access cash that can be used to fulfill their discovery obligations. Indeed, since April 2025, Har Hazayism has

---

[2] The calculation of $685,000 set forth in the Government's initial motion for sanctions remedies understates the actual amounts that Defendants should return since they were calculated with bank statements produced through January 2025. As set forth here, however, the Government discovered through recently produced bank statements that Defendants continued to violate the August 2024 Order through at least June 2025.

[3] The Government does not yet have access to Defendants' financial transactions for July 2025.

also transferred: (1) $83,300 to Landau personally, Miccarelli Decl. ¶ 7; and (2) $320,260 to an account held by The Malon Resort LLC, *id.*[4]—a company with the same exact name of the $14 million hotel that Landau previously acquired but now denies owning.[5] Finally, once again, Defendants have failed to submit any declarations by Landau or Defendants' employees corroborating the attorney proffer. For these reasons, the Court should deny Defendants' request.

***Financial Discovery Deadline.*** The Court should also reject Defendants attempt to modify the Court's order requiring the production of *all* outstanding financial discovery by August 4, 2025, to a lesser and vague requirement of "substantial completion" by August 4, 2025. Dkt. No. 665. Defendants agreed to a deadline for completion of financial discovery by July 22, 2025. *See* Dkt. No. 588. The schedule did not have any caveat permitting "substantial completion" by July 22. Defendants failed to comply with the July 22 deadline, and the Government moved to compel. Dkt. No. 599. Defendants did not oppose that motion. The Court's July 30, 2025, order granting the motion likewise left no ambiguity: "Defendants shall produce *all* outstanding financial discovery as set forth in the Government's letter of July 25, 2025, no later than August 4, 2025." Dkt. 664 (emphasis added). But Defendants letter improperly attempts to modify the Court's order to requiring only "substantial completion." Dkt. No. 665. Specifically, Defendants write that they "anticipate substantial completion of financial discovery by August 4, 2025." *Id*. The Court should reject Defendants' attempt to modify the Court's order requiring that "all financial discovery" by August 4, 2025, to Defendants' proposed ambiguous requirement of "substantial completion."

The Government also objects to Defendants' statement that: "Defendants reject the notion that they are obligated to (or even can) produce financial discovery for each entity identified in the Government's motion to compel to the extent Defendants do not own or control the entity." Dkt. No. 665 at 2 n.1. As an initial matter, Defendants had the opportunity to oppose the Government's motion to compel and did not do so. This request is thus an improper motion for reconsideration. Moreover, Defendants cannot avoid their financial discovery obligations by focusing only on who, according to Defendants' view, *currently* owns certain corporations or partnerships—particularly when the documents requested are in fact in Defendants' possession, custody, and control. This is especially so here where Defendants have engaged in a practice of dissipating assets by changing the ownership of an LLC. For example, two days after the Government informed Defendants that it would seek prejudgment remedies, on July 25, 2024, Landau and his son entered into an operating agreement for Yampola LLC that stated that Landau's son (rather than Landau) was the 90% owner of Yampola LLC. *See* Dkt. 535 at 23. Accordingly, in response to financial RFP 1 that seeks documents regarding Defendants' corporations or partnerships, Defendants should produce all documents in for any of Defendants' corporations or partnerships, including those that they purport not to currently own or control by virtue, for example, of having transferred it.

---

[4] These accounts transferred some funds back to Har Hazayism during this time period, but far less amounts. *See* Miccarelli Decl. ¶ 8.

[5] As noted in other submissions, Landau purchased this hotel and transferred it to an LLC that another of his companies owns; he purchased an additional 25 properties not subject to writs that he failed to disclose to the Government in the August 2, 2024 declaration; he admitted to owning a $2 million property in Tiberias, Israel but now denies owning this or any other property in Israel; and bank records show he has transferred at least $1.5 million to pay for property in Israel (that may or may not be the Tiberias property). 22 Civ. 10313, Dkt. 535, at 22-24; Dkt. 599 Ex. 4.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By: /s/ Charles S. Jacob
    RACHAEL DOUD
    LAWRENCE H. FOGELMAN
    CHARLES S. JACOB
    MOLLIE KORNREICH
    DANIELLE J. MARRYSHOW
    Assistant United States Attorneys
    86 Chambers Street, 3rd Floor
    New York, NY 10007
    Telephone: (212) 637-2800
    Email: rachael.doud@usdoj.gov
          lawrence.fogelman@usdoj.gov
          charles.jacob@usdoj.gov
          mollie.kornreich@usdoj.gov
          danielle.marryshow@usdoj.gov

cc: Counsel of Record (by ECF)